## FRED P THOMAS CO v WEIL, etc

Ohio Appeals, 8th Dist, Cuyahoga Co.

No 14966. Decided Jan 27, 1936

Stanley & Smoyer, Cleveland, for plaintiff in error.

Lowell & Zucker, Cleveland, for defendant in error.

## OPINION

By TERRELL, J.

The rights of the agent and sub-agent are determined by the written contracts. The agent and sub-agent in the final analysis were both agents of the Insurance Company. The ultimate contracts they were dealing with, for which premiums were paid, were contracts between the Insurance Company and the policy holders. The pre-

miums for said policies paid by the policy holders were premiums due to the insurance company. The unearned premiums for policies cancelled either at the request of the policy holder or by the action of the Insurance Company, were funds due to the policy holders from the Insurance Company.

By the agreement of the Insurance Company with the agent and the agent with the sub-agent, the premiums from the policy holders were collected by the sub-agent as agent and not as principal. He held these premiums in a fiduciary capacity and was accountable therefor to the agent, who in turn was accountable to the Insurance Company. The unearned premiums to be returned to the policy holder by reason of the cancellation of the policies were handled by the agent and sub-agent as agents and not as principals. If these agents were derelict in their duty of returning the premiums to the policy holders, the Insurance Company would still be liable to said policy holders for said unearned premiums.

When an unearned premium was returned by the Insurance Company, the custom was to return it to the agent which in turn conveyed this unearned premium to the sub-agent. This arrangement grew out of the conveniences of the situation. The sub-agent was the only one in personal contact with the policy holder, and it was more convenient for him to get in personal touch with the policy holder than it was for either the Insurance Company or the agent. It also helped toward the good will of the sub-agent's business to deal personally with his customers. But there is not one word in the contracts of agency wherein there is a legal right established by which the title to any unearned premiums passed to the sub-agent. The title to the unearned premium was in the policy holder. The agent and sub-agent were mere messengers of the Insurance Company to make delivery thereof to the policy holder.

When the Insurance Company went into the hands of a receiver, the unearned premiums on the business of the sub-agent amounted to approximately $5000. But no legal title thereto passed to the sub-agent. The sub-agent had no legal right or title to these unearned premiums, but if the Insurance Company, while solvent, saw fit to return the unearned premiums and used the method and means of returning them through the agent and sub-agent, this did not create a title in said funds either in the agent or sub-agent. If the sub-agent did receive from the Insurance Company through the agent any unearned premiums,

they would not belong to the sub-agent, but should be by him turned over to the policy holders.

In the present case it is apparent that since the Insurance Company is in receivership and all the outstanding policies have been cancelled by the receiver, which is by operation of law, and the contracts of the agent and sub-agent with the Insurance Company are thereby concluded, there is no obligation on the part of the receiver to return through the agent and sub-agent to the policy holders any unearned premiums. In fact, the receiver has already notified the policy holders to file their individual claims against the estate of the Insurance Company for any unearned premiums. The sub-agent was not within his legal rights to demand of the agent that all unearned premiums, since the date of the receivership upon business produced by him should be credited on his note or open account with the general agent.

I have been unable to understand upon what theory counsel for the sub-agent bases his claim. Nowhere in the wording of the agency contract can be found any clause or words from which it can be concluded that the return premiums on cancelled policies belong to the sub-agent. Nowhere in said agreement does it appear that the agent or insurance company were bound to return unearned premiums to the policy holder through the sub-agent. It cannot be implied from the thirty years of dealing between these parties. During all that time no credit for unearned premiums has been made by the agent to the sub-agent, unless the Insurance Company had allowed a like credit to the agent to be passed on to the policy holder. The agent did not promise to pay from its own funds the unearned premiums on cancelled policies. The agent did not guarantee the solvency of the insurance company. The sub-agent, Weil, was vice president of the agent company and helped to select said Insurance Company. The receiver is not required to return the unearned premiums to the agent or sub-agent. The insolvency and receivership terminated the agency contracts.

Counsel for the sub-agent states in his brief that "The agent is the seller and the sub-agent the purchaser," and contends that by reason thereon the unearned premiums should be returned to him because he had been charged with them. This contention is purely theoretical and argumentative and has no foundation in fact. Search will be made in vain in the agency agreement to find any language that would justify such an interpretation. The sub-agent

specifically agreed to act in a representative capacity as an agent to procure applications and collect premiums in a fiduciary trust capacity. It would do violence to the English language and to common sense to conclude from said written contract of agency that the sub-agent was to be a purchaser and the agent a seller of said insurance policies.

The Supreme Court of Minnesota had before it a case in many respects quite similar to this case before us. It was the case of Hedwall Co. v Security Mortgage Co. of America, 194 N.W. Reporter, page 757. Hedwall was a general insurance agent. The Security Mortgage Company stood in the position of a sub-agent, an officer thereof having been licensed as a broker. The sub-agent received as its compensation 35% of the premiums and remitted 65% of the premiums to the agent. For a long period of time the custom grew up between the parties whereby when policy holders demanded cancellation of the policies the sub-agent would pay to the policy holder the unearned premiums and charge that amount against the account of the agent in its proper proportion. There was no express agreement that this should be done, but it seemed to be a convenient course of dealing. The Insurance Company became insolvent. The sub-agent gathered together the outstanding policies written through it for cancellation and requested the agent to refund its proportionate part of the unearned premium. The agent refused to do this because the Insurance Company was insolvent and that by reason of the insolvency it was no longer agent for the Insurance Company. Eventually the agent sued the sub-agent upon the open account between them. The sub-agent claimed a set-off for the unearned premiums upon these policies after the insolvency of the Insurance Company. The court held:

"An agent is not liable to the insured for a refund of unearned premiums upon cancellation. His company is. * * * An agent, making refunds to its patrons from time to time, out of its own money, instead of sending them to the insurer, does not bind himself to make refunds ever afterwards. From such a course of dealing a contract to make refunds continuously, though the company becomes insolvent, cannot be inferred."

The court refused to allow the claims for setoff by the sub-agent.

We conclude that the trial court was in error in allowing this setoff to the sub-agent of the unearned premiums upon the policies outstanding at the time of the insolvency of the Insurance Company, and proceeding now to enter the judgment that the trial court should have entered, we make a finding and judgment for The Fred P. Thomas Company in the amount for which it has entered suit.

LIEGHLEY, PJ, concurs in the judgment.
LEVINE, J, dissents from the entry of final judgment.

## DISSENTING OPINION

By LEVINE, J.

I am unable to concur in the opinion of the majority of this court which rendered final judgment in favor of plaintiff in error. The nature of the dispute between the parties has been fully set forth in the majority opinion. Some of the principles announced therein I do not disagree from. There is but one point of difference. We are called upon to construe paragraph nine of the agreement, called "Sub-Agent's Contract," which is the agreement between The Fred P. Thomas Company and Raymond M. Weil. It reads as follows:

"The Sub-Agent shall pay to the Agent, on or before the 10th day of each month, all premiums written for or through the Sub-Agent during the second preceding month, in accordance with monthly statement rendered by the Agent to the Sub-Agent. In the event of credits to the Sub-Agent, arising from cancellations, these credits shall be allowed to the Sub-Agent in the statement for the month in which the cancellation actually occurs, and not before."

What was in the contemplation of the parties when paragraph nine was inserted into the contract? Unquestionably it was the intention that the sub-agent Raymond M. Weil was to be held personally for all policies written for or through him. Apparently The Fred P. Thomas Company did not wish to depend upon the contingency of non-payment of premiums by any one who purchased an insurance contract from the sub-agent. The Fred P. Thomas Company looked to Raymond M. Weil for the payment of all such premiums on insurance contracts written for or through him and by him sold to his customers. On the other hand, the sub-agent was to collect the premiums from his customers on all such policies sold by him. In the event of cancellation of policies credits were to be

allowed to the sub-agent in his monthly statement. In effect and substance Raymond M. Weil was the purchaser of contracts of insurance which he in turn sold to his customers. When these contracts of insurance for which Raymond M. Weil became personally liable were delivered to him, he had a right to contemplate that the instruments in writing are in fact what they purport to be; that the duration of time specified in the policy during which these contracts of insurance were to have force and effect will be the life of the policy. He did not intend to bind himself personally to pay for policies which through no fault of his will cease to exist.

Much discussion was had in the briefs and argument of counsel as to the meaning of the term "cancellations." As I view it, the insolvency and consequent receivership of the Insurance Company amounted in law to a breach of contract on the part of the Insurance Company. Raymond M. Weil was in no way responsible for this condition of the Insurance Company nor did any act of his contribute thereto. It seems to me, in so far as Weil is concerned, that there was a failure of consideration; that the instruments in writing purporting to be contracts of insurance for a definite term of years turned out not to be such contracts of insurance because of the insolvency and subsequent receivership of the Insurance Company. He obligated himself to pay for contracts of insurance which are in fact in accordance with the terms and tenor thereof only. Raymond M. Weil collected some of the premiums from his customers. The extent of these collections is left in doubt in so far as the record is concerned. One may reasonably be led to the conclusion that there are some premiums which were not collected by him. As to the premiums which he actually collected, it was perfectly equitable that he should be held to his agreement to pay for same. So far as he is concerned, these transactions are fully completed. If the purchasers of the insurance policies could legally have recourse against Raymond M. Weil personally for a return of the premiums which he collected from them on their policies which ceased to exist, it would perhaps be entirely equitable not to hold Raymond M. Weil to his obligation to personally pay for such policies delivered to him and in turn sold by him.

The trend of authority seems to be that the agent is not liable to the insured for a refund of unearned premiums upon cancellation. To enable him to set off unearned premiums against his own obliga-

tion to pay for the policies delivered to him while he is retaining the premiums collected by him on such policies would be wholly inequitable. As to those policies sold by him to his customers wherein the premiums were not collected by him, he should be allowed to avoid his obligation to pay for same because the policies which were delivered to him purported to have a definite duration of time,—a life of a definite number of years. These policies were not what they purported to be, because of the insolvency and subsequent receivership of the Insurance Company.

To accomplish an equitable accounting, this case should be remanded to the Common Pleas Court for an ascertainment of the vital fact, namely, the extent of the premiums actually collected by Weil. The rendering of final judgment against Weil would obligate him to pay for policies wherein the premiums were not collected by him. This was not in the contemplation of the parties when Raymond M. Weil entered into a personal obligation to pay the premiums.

I, therefore, concur in the order of reversal, but dissent from the entry of final judgment.